# EXHIBIT 3

# EXHIBIT 3

**Electronically Filed**
**7/2/2022 11:15 AM**
**Steven D. Grierson**
**CLERK OF THE COURT**

P. STERLING KERR, ESQ.
Nevada Bar No. 3978
GEORGE E. ROBINSON, ESQ.
Nevada Bar No. 9667
KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200
Henderson, Nevada 89052
Telephone No. (702) 451–2055
Facsimile No. (702) 451-2077
Email: sterling@kerrsimpsonlaw.com
Email: george@kerrsimpsonlaw.com
*Attorneys for Plaintiff*

**DISTRICT COURT**
**CLARK COUNTY, NEVADA**

| | |
|---|---|
| INTERNATIONAL MARKETS LIVE INC., a New York corporation dba IM MASTERY ACADEMY;<br><br>        Plaintiff,<br><br>v.<br><br>DAVID IMONITIE an individual; SPELA SLUGA, an individual; DEVON ROESER, an individual; IVAN TAPIA, an individual; NVISIONU, INC. a Delaware corporation; ILYKIT, LLC, a Utah limited liability company;<br><br>        Defendants. | Case No.:<br><br>Dept. No.:<br><br>**COMPLAINT FOR:**<br><br>1) BREACH OF CONTRACT;<br>2) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING<br>3) VIOLATION OF UNIFORM TRADE SECRETS ACT<br>4) DEFAMATION PER SE;<br>5) TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS;<br>6) TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; and<br>7) CIVIL CONSPIRACY |

Plaintiff International Markets Live Inc., dba IM Mastery Academy ("IML" or "IM") complains and alleges against Defendants David Imonitie, an individual; Ivan Tapia, an individual; Spela Sluga, an individual; Devon Roeser, an individual; Nvisionu, Inc. a Delaware corporation; and ILYKIT, LLC, a Utah limited liability company (collectively, "Defendants"); as follows:

-1-

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone (702) 451-2055 Facsimile (702) 451-2077

# I.
## PARTIES

1.    Plaintiff International Markets Live Inc., dba IM Mastery Academy, is a New York corporation with corporate offices in Lehi, Utah.

2.    Defendant David Imonitie ("Imonitie"), is an individual residing at 11726 Montmarte Boulevard, Houston, Texas 77082.

3.    Defendant Spela Sluga ("Sluga") is an individual residing at 2301 Laguna Circle, # 1703, North Miami, Florida 33181.

4.    Defendant Devon Roeser ("Roeser") is an individual residing at 257 E. Philadelphia, Detroit, Michigan 48202.

5.    Defendant Ivan Tapia ("Tapia") is an individual residing at 1915 E Palomar Street #10, Chula Vista, California 91913.

6.    Defendant Nvisionu, Inc. ("Nvisionu") is a Delaware Corporation with corporate offices in Delaware.  Nvisionu may be served with process through its registered agent, A Registered Agent, Inc., 8 The Green, Ste. A, Dover, Delaware 19901.

7.    Defendant ILYKIT, LLC ("ILYKIT") is a Utah limited liability company with corporate offices in Utah.  ILYKIT may be served with process through its registered agent, Envex.Com LLC, 10808 S. Riverfront Parkway #3061, South Jordan, Utah 84095.

# II.
## JURISDICTION AND VENUE

8.    Jurisdiction is proper as the agreements the parties entered into provide that all disputes should be resolved in Las Vegas, Nevada.

9.    Venue is proper as the agreements the parties entered provide that all disputes should be resolved in Las Vegas, Nevada.

/ / /

/ / /

-2-

### III.
### GENERAL ALLEGATIONS

10.    IML provides its customers with digital educational tools and services focused on teaching skills in how to trade foreign currencies, and crypto and digital currencies and how to develop a business on e-commerce platforms, and has recently launched a members' travel benefits program.  IML has been working on and will launch a health and wellness program in late 2022.

11.    The primary IML products currently available to customers are learning modules known as academies. The academies teach customers (i) the basics of foreign currency exchange; (ii) about fast paced trading strategies that can be used for short time frame trading; (iii) about the digital currency exchange including the different types of digital currencies, block chain, and types of trading, among others; (iv) about e commerce and how to build an online business including setting up an online business, payment processing, advertising online, trending online products and providing customer service for online customers of ecommerce businesses; and (v) various advanced trading strategies.

12.    Each academy is delivered by means of access to unlimited interactive online sessions with IML trainers called IML "Educators", via an online interactive service which is called "goLive". Each goLive session is live and interactive and is offered in 13 languages on multiple days and at varied times to accommodate customers in different time zones. Customers can also access a library of pre-recorded video modules for each academy including on mobile devices via the IM academy app.

13.    IML's services are sold under a direct sales model and are offered to individuals on a subscription basis.  IML acquires its customers through a network of independent self-employed sales representatives who are paid on a commission only basis through a multi-level marketing compensation plan. These representatives are known as Independent Business

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

Owners ("IBOs").

14.    Under the direct sales model, IML enters into agreements with the IBOs authorizing them to market IML's products and services to end consumers. IBOs are also offered the opportunity to build a sales team by introducing other individuals to IML to become IBOs and may be compensated for the customer sales of those IBOs in their sales team.

15.    IML's business is driven by its IBOs, products and services and customers. The information about the IBOs including their genealogy and other financial, technical and other such information is extremely confidential and proprietary to IML. IML's proprietary data regarding its IBOs and customers gives it a significant competitive advantage in the marketplace. Therefore, IML treats information regarding its IBOs and customers as highly confidential and restricts access to all such information.

16.    IML has approximately 190,000 active customers of its products and services and approximately 49,000 IBOs globally, many of whom are located in Nevada.

A.    The IBO Defendants.

17.    The agreement between IML and an IBO is comprised of the IBO Terms and Conditions, the Policies and Procedures, and the other documents and policies incorporated therein (together, the "IBO Agreement").

18.    The only way a person can become an IBO is by entering into an IBO Agreement. All IBOs enter into the IBO Agreement in their individual capacities. An IBO may later apply to IML to use a DBA or to have their commissions paid to an entity owned by the individual IBO, however, the inclusion of any such new DBA or entity does not change the individual nature of the IBO Agreement which is exclusively between the IBO and IML.

19.    When a person applies to work with IML as an IBO, he or she must submit an application to IML on IML's website. When submitting the digital application, an IBO

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

-4-

applicant must certify that the applicant has carefully read and agrees to comply with the IBO Agreement. Once an IBO is approved by IML, the IBO must sign in to the website used by IBOs in order to run their IML business, known as the IBO back office.

20. Defendants Imonitie, Sluga, and Tapia (the "IBO Defendants") each submitted an application to IML on its website in his or her individual capacity. When doing so, each of the IBO Defendants certified that he or she carefully read and agreed to comply with the IBO Terms and Conditions, the Policies and Procedures, and the remaining documents and policies incorporated therein. Each of the IBO Defendants therefore entered into IBO Agreements.

21. The Policies and Procedures in effect at the time each IBO entered into an IBO Agreement contained a valid and enforceable provision stating that any future amendment, change, or modification to the IBO Agreement shall be effective thirty (30) days following notice by posting on the official IML website, www.im.academy, electronic mail (e-mail), or any other IML communication channels or social media outlets including the IML App.

22. The current version of the Policies and Procedures can be viewed at https://im.academy/policies. The prior version of the Policies and Procedures was in effect since on or around January 15, 2019. The prior version of the Policies and Procedures can be viewed on the Internet Archive at https://web.archive.org/web/20220320165400/https://im.academy/policies#info-id-1-1.

23. The IBO Terms and Conditions were updated on or around June 5, 2021. The current version of the IBO Terms and Conditions can be viewed on the Internet Archive at https://web.archive.org/web/20220320165357/https://im.academy/termsAndConditions. The prior version of the IBO Terms and Conditions can be viewed on the Internet Archive at https://web.archive.org/web/20210517163917/https://im.academy/termsAndConditions.

24. The IBO Defendants agreed that:

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

-5-

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone (702) 451-2055 Facsimile (702) 451-2077

Business reports, the identity and contact information of Customers, IBOs, and potential Customers or IBOs (including as available on group chats), information about IM's or an IBO's genealogy, and any other financial, technical or other information that is not generally known and/or is of a sensitive nature and that is circulated by IM or pertains to the business of IM, both written or otherwise, whether that information is received directly from IM or from other IBOs are confidential and proprietary information and trade secrets belonging to IM. Such information shall be referred to collectively as "IM Confidential Information and Trade Secrets."

Policies and Procedures § 12.1.

25.     The IBO Defendants agreed not to "engage in crossline sponsoring, solicitation of competing services, unhealthy competition or unethical business practices.  Policies and Procedures § 1.2. They also agreed not to engage in or perform any misleading, deceptive, or unethical practices, and to support, protect, and defend the integrity of the IML income opportunity. *Id.*

26.     The IBO Defendants further agreed to certain reasonable non-solicitation provisions contained in the IBO Terms and Conditions.  Specifically, they agreed to the following:

Restrictive Covenants

…

B. Customer/Member Non-Solicitation. During the term of this IBO Agreement and for a period of one (1) year after the expiration or earlier termination hereof, I agree that I shall not Solicit any Customer/Member to whom I have marketed IM Products and/or Services within the immediately prior two (2) years to (i) move their business away from IM; or (ii) purchase products or services that are the same as or similar to any IM Products and/or Services unless expressly approved in writing by IM. I acknowledge and agree that all Customers/Members Solicited by an IBO for the promotion or sale of IM Products or/or Services are deemed to be Customers/Members of IM and not of the IBO, whether or not the IBO originally introduced such Customer/Member to IM.

C. Restricted IBO Non-Solicitation. During the term of this IBO Agreement and for a period of one (1) year after the expiration or earlier termination hereof, I agree that I shall not Solicit any Restricted IBO to participate, personally or through any entity or other medium, in another multi-level marketing, network marketing, or other direct selling business opportunity. I acknowledge and agree that due the nature of network marketing it is reasonable that the foregoing Solicitation prohibition extends to all markets in which IM conducts business.

-6-

Terms and Conditions § 20.

27.    As part of the IBO Agreement, the Policies and Procedures includes a similar prohibition:

Section 3.6 Solicitation for Other Companies or Services

(a) An IBO may participate in other direct sales, multilevel, network marketing, or relationship marketing business ventures or marketing opportunities, as long as they are for non-competing services, strategies, or products. However, during the term of the Agreement and for one (1) year thereafter, an IBO may not solicit or recruit any fellow IBO or Customer to whom the IBO has marketed IM services or strategies within the immediately prior two (2) years to (i) participate, personally or through any entity or other medium, in another multi-level marketing, network marketing, or other direct selling business opportunity (ii) to move their business away from IM; or (iii) purchase products or services that are the same as or similar to any IM Services and/or strategies unless expressly approved in writing by IM.
…
d) All Customers solicited by an IBO for the promotion or sale of IM Services and strategies are deemed to be Customers of IM and not of the IBO, whether or not the IBO originally introduced such Customer to IM.

(e) During the term of this Agreement, IBOs must not sell, or entice others to sell, any competing services or strategies, including training materials, to IM Customers or IBOs. Any product or service in the same category as an IM strategy or service is deemed to be competing (i.e., any competing product or service regardless of differences in cost or quality).

28.    Each IBO Defendant agreed to all of the foregoing terms.

29.    On or about October 8, 2016, Defendant Imonitie first entered into an IBO Agreement requiring the IBO to agree to IML's Policies and Procedures.  Imonitie continued to use the IBO back office website and was bound by the changes to the IBO Agreement as updated through that date.  Imonitie last agreed to the IBO Agreement when logging in to the IBO website on May 1, 2022.

30.    On May 15, 2022, Defendant Imonitie terminated his IBO Agreement, so that he could join with the other Defendants and launch a venture to compete with IML in violation

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

of the terms of the IBO Agreement.  That venture, Nvisionu,[1] was formed to compete with IML. Nvisionu is a multilevel, network marketing company and Imonitie has been and continues to solicit and recruit IBOs and IML's customers to join Nvisionu and to move their business away from IML and to Nvisionu.

31.     On or about December 19, 2015, Defendant Sluga entered into an IBO Agreement requiring the IBO to agree to IML's Policies and Procedures.  Sluga logged in to the IBO website on May 20, 2022.

32.     On or about December 19, 2015, Defendant Tapia entered into an IBO Agreement requiring the IBO to agree to IML's Policies and Procedures. Tapia last agreed to the IBO Agreement when logging in to the IBO website on June 3, 2022.

B.     The Contractor Defendants.

33.     Defendants Roeser, ILYKIT and Sluga all entered into separate independent contractor agreements with IML, and are referred to herein as the "Contractor Defendants."

34.     On or about May 20, 2020, Defendant Roeser entered into an independent contractor agreement with IML in which she agreed to strict confidentiality, non-competition and non-solicitation terms (the "Roeser ICA").  Specifically, Roeser agreed as follows:

Confidential Information

(a) ... at all times during the term of my Relationship with the Company and thereafter, to hold in strictest confidence, and not to use, except for the benefit of the Company, or to disclose to any person, firm, corporation or other entity without written authorization of the Board of Directors of the Company (the "Board"), any Confidential Information of the Company which I obtain or create. I further agree not to make copies of such Confidential Information except as authorized by the Company. I understand that "Confidential Information" means any Company

---

[1] On information and belief, Defendants may be operating under other entities in addition to or in lieu of Nvisionu, and may have engaged in certain alleged activities in their individual capacities prior to formation of an organization with the intent of forming an organization at some future point.  Plaintiff may seek in the future to amend the Complaint to add additional defendants as necessary to address all relevant entities through which the other Defendants operate.

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

proprietary information, technical data, trade secrets or know-how, including, but not limited to, business plans and strategies, Internet addresses and web pages, research, product plans, products, services, suppliers, customer lists and customers (including, but not limited to, customers or prospective customers of the Company on whom I called or with whom I became acquainted during the Relationship), prices and costs, markets, software, developments, inventions, laboratory notebooks, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, licenses, finances, budgets or other business information disclosed to me by the Company either directly or indirectly in writing, orally or by drawings or observation of interfaces, parts or equipment or created by me during the period of the Relationship on behalf of or within the course and scope of my performance of services to the Company, whether or not during working hours. I understand that "Confidential Information" includes, but is not limited to, information pertaining to any aspects of the Company's business which is either information not known by actual or potential competitors of the Company or is proprietary information of the Company or its customers or suppliers, whether of a technical nature or otherwise. I further understand that Confidential Information does not include any of the foregoing items which has become publicly and widely known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved.

Roeser ICA, Exhibit A.

35.    Roeser also agreed that while she served as a contractor for IML and for a period of three (3) years after termination, not to "promote, participate, or engage in or render any services of a business or commercial nature to, whether for compensation or otherwise, directly or indirectly, any business directly competitive with the [IML's] brand, both tangible and intangible, and with regard to both its platform and its services."  Roeser ICA at § 5A.

36.    Roeser further agreed that while she served as a contractor for IML and for a period of three (3) years after termination, not to "directly or indirectly, … solicit, attempt to employ or enter into any contractual agreement with any employee, consultant or former employee or consultant of [IML]. ... Further, for a period of twenty-four (24) months following termination for any reason, [Roeser] shall not solicit any customer of [IML] with respect to any business, products or services that are competitive to the products or services offered by [IML] or under development as of the effective date of termination with [IML]."  Roeser ICA at §5B.

37.     On or about March 1, 2022, Defendant ILYKIT entered into an independent contractor agreement with IML in which it agreed to strict confidentiality, non-competition and non-solicitation terms substantially similar to those contained in the Roeser ICA (the "ILYKIT ICA").

38.     On or about December 19, 2015 Defendant Sluga entered into a confidentiality and proprietary rights agreement with IML in which she agreed to substantially the same confidentiality, non-disclosure and non-competition terms as contained in the Roeser ICA.

39.     Shortly thereafter, on or around April 20, 2022, IML terminated the ILYKIT ICA.  Thereafter, ILYKIT began working with Defendants Imonitie, Nvisionu and others in a competing venture all in violation of the ILYKIT ICA.

C.     The Defendants Breached Their Agreements and Other Bad Acts.

40.     At all times relevant herein, the IBO Defendants knew and were aware of the terms of their IBO Agreements, including the prohibitions against recruiting IBOs, employees, educators, contractors and customers to leave IML, the prohibition against working for a competitor of IML, and the prohibition against providing Confidential Information and intellectual property to anyone outside of IML or its contractors.

41.     At all times relevant herein, the Contractor Defendants knew and were aware of the terms of their respective independent contractor agreements, including the prohibitions against recruiting or soliciting IBOs, contractors, educators, employees and customers to leave IML for two years following termination of the independent contractor agreement for any cause, the prohibition against working for a competitor of IML, and the prohibition against providing confidential information and intellectual property to anyone outside of IML or its contractors

/ / /

/ / /

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

42.     Despite these prohibitions, the IBO and Contractor Defendants either resigned or terminated their agreements with IML, and then conspired to and began to recruit and solicit other IBOs and contractors, and to directly compete with IML in the marketplace.

43.     The IBO and Contractor Defendants breached their contracts with IML by, among other things, leaving IML and immediately forming and/or joining a competing company, Nvisionu.

44.     The IBO and Contractor Defendants have conspired to bribe, solicit, recruit, and entice other IML IBOs, customers, contractors, employees and educators away from IML and to Nvisionu. The IBO and Contractor Defendants conduct was knowing and intentional.

45.     The IBO and Contractor Defendants knowingly, intentionally, and wrongfully took Confidential Information and intellectual property from IML, and improperly and illegally gave the information to Nvisionu and/or its representatives and agents.

46.     Nvisionu then used the Confidential Information and intellectual property that it knew the IBO and Contractor Defendants stole from IML to directly compete with IML in the marketplace.

47.     The IBO and Contractor Defendants published false statements, and statements in violation of their IBO Agreements, on social media platforms regarding IML, its employees, and IBOs in order to harm IML's reputation and statute in the marketplace and promote Nvisionu.

48.     IBO Defendant Imonitie knowingly and intentionally encouraged this conduct in violation of his IBO Agreement.

49.     IML suffered financial harm as a result of the IBO and Contractor Defendants and Nvisionu's wrongful conduct.

/ / /

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

## IV.
## FIRST CLAIM FOR RELIEF

(Breach of Contract – The IBO Defendants)

50.     IML incorporates by reference and reaffirms each and every allegation previously asserted as if fully set forth herein.

51.     The IBO Defendants all entered into valid contracts with IML.

52.     At all relevant times herein, IML performed the obligations and duties required of it by the contracts it had with the IBO Defendants.

53.     The IBO Defendants each breached their contracts with IML by disclosing IML's confidential and trade secret information, soliciting IML's current IBOs, employees, educators and contractors, and competing with IML.

54.     The IBO Defendants' breach of their contracts have caused damages to IML excess of one million dollars ($1,000,000.00).

55.     IML is entitled to its reasonable attorney's fees due to the IBO Defendants' breach of their contracts.

## V.
## SECOND CLAIM FOR RELIEF

(Breach of Contract – The Contractor Defendants)

56.     IML incorporates by reference and reaffirms each and every allegation previously asserted as if fully set forth herein.

57.     The Contractor Defendants each entered into one or more enforceable and valid contracts with IML.

58.     At all relevant times herein, IML performed the obligations and duties required of it by the contracts it had with the Contractor Defendants.

59.     The Contractor Defendants breached their contracts with IML by failing to comply with the terms of their respective agreements, taking confidential and trade secret

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

-12-

information from IML for Nvisionu's use in violation of their agreements, soliciting and/or recruiting IBOs, educators, employees, contractors, and/or customers to leave IML and join Nvisionu in violation of their agreements, and competing with IML in violation of their agreements.

60.    The breaches of the contracts by the Contractor Defendants, and each of them, have caused damages to IML in excess of one million dollars ($1,000,000.00).

61.    IML is entitled to its reasonable attorney's fees due to the Contractor Defendants' breaches of the agreements.

## VI.
## THIRD CLAIM FOR RELIEF

(Breach of Implied Covenant of Good Faith and Fair Dealing –
The IBO and Contractor Defendants)

62.    IML incorporates by reference and reaffirms each and every allegation previously asserted as if fully set forth herein.

63.    The IBO and Contractor Defendants each entered into one or more enforceable and valid contracts with IML.

64.    The contracts between the IBO and Contractor Defendants and IML contained an implied promise of good faith and fair dealing.

65.    At all relevant times herein, IML performed the obligations and duties required of it by the contracts it had with the IBO and Contractor Defendants in good faith.

66.    The IBO and Contractor Defendants, in deliberate contravention to the intention and spirit of their respective contracts, performed their respective contracts with IML in a manner that was unfaithful to the purpose of the contracts by failing to conform to the terms of their respective contracts, namely by taking confidential and trade secret information from IML for Nvisionu's use in violation of their agreement(s), soliciting and/or recruiting IBOs,

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

employees, educators, contractors, and/or customers to leave IML and join Nvisionu in violation of their agreement(s), and competing with IML in violation of their agreement(s).

67.     As a result of the IBO and Contractor Defendants' acts and/or omissions as described in the foregoing paragraph, the justified expectations of IML pursuant to the respective contracts were thus denied.

68.     The breaches of the duty of good faith and fair dealing by the IBO and Contractor Defendants, and each of them, have caused damages to IML excess of one million dollars ($1,000,000.00).

69.     IML is entitled to its reasonable attorney's fees due to the IBO and Contractor Defendants' breaches of their agreements.

## VII.
## FOURTH CLAIM FOR RELIEF

(Misappropriation and Violation of Uniform Trade Secrets Act – Nevada Revised Statues Chapter 600A against all Defendants)

70.     IML incorporates by reference and reaffirms each and every allegation previously asserted as if fully set forth herein.

71.     The IBO and Contractor Defendants acquired IML's trade secrets by an improper means, including stealing or misappropriating the trade secrets from IML by downloading the content of the IM Academy which they plan to use to compete with IML and/or by refusing to return IML's confidential information.

72.     Nvisionu knew or had reason to know that the IBO and Contractor Defendants acquired the trade secrets under circumstances giving rise to a duty to maintain its secrecy or limit its use, and/or that the Defendants acquired the trade secrets by deriving them from or through a person who owed a duty to a person seeking relief to maintain its secrecy or limit its use.

-14-

73.     Defendants misappropriated IML's trade secrets by disclosing the trade secrets without express or implied consent from IML, including those trade secrets that were obtained without authorization from IML.

74.     Defendants further misappropriated IML's trade secrets by using the trade secrets without express or implied consent from IML.

75.     Defendants had a duty to maintain the secrecy of IML's trade secrets.

76.     Defendants knew that they lacked express or implied consent to use the trade secrets.

77.     Defendants knew or had reason to know, including but not limited to because of the confidentiality clauses in the agreements they signed and the duties of their roles at IML, that the trade secrets were acquired by improper means.

78.     As a result of Defendants' misappropriation of IML's trade secrets, IML has suffered damages to be determined at trial in excess of one million dollars ($1,000,000.00).

79.     IML is entitled to exemplary damages due to Defendants' willful and malicious misappropriation of IML's trade secrets in excess of one million dollars ($1,000,000.00).

80.     IML is entitled to its reasonable attorney's fees and costs due to Defendants' willful and malicious misappropriation of IML's trade secrets.

**VIII.**
**FIFTH CLAIM FOR RELIEF**

(Defamation Per Se against Defendants)

81.     IML incorporates by reference and reaffirms each and every allegation previously asserted as if fully set forth herein.

82.     Defendants made statements on social media which tend to harm the reputation of IML in the estimation of the community and deter third persons from associating or dealing with IML.

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

83.    The statements were published to third persons, and specifically, members of the public and/or members of exclusive public groups such as the followers of an account or members of a restricted group.

84.    The statements are false and defamatory.

85.    The statements were intentionally published on the internet.

86.    Defendants' publishing of the statements was intentional, reckless, and/or negligent.

87.    The statements constitute the imputation that IML has a lack of fitness for trade, business, or profession.

88.    As a direct and proximate result of Defendants' defamatory acts, IML has been harmed in amount in excess of one million dollars ($1,000,000.00).

89.    It has been necessary for IML to retain the services of an attorney to prosecute this action and, therefore, IML is entitled to reasonable attorney's fees and costs.

**IX.**
**SIXTH CLAIM FOR RELIEF**

(Tortious Interference with Contractual Relations against Defendants)

90.    IML incorporates by reference and reaffirms each and every allegation previously asserted as if fully set forth herein.

91.    IML had valid and enforceable contractual relationships with customers who are receiving its digital educational services and IBOs who promote its services and its business opportunity in each case in exchange for monetary compensation.

92.    IML had valid and enforceable contractual relationships with IBOs who build its business, represent its brand in the community and social media, and acquire customers.

93.    Defendants knew of these contractual relationships, including the contents of the respective agreements.

-16-

94.     Defendants spread false information and used IML's confidential information and trade secrets to form relationships with IML's customers for Nvisionu's gain.

95.     Defendants encouraged IBOs to violate their IBO Agreements with IML by posting material that is out of compliance with IML's Policies and Procedures, and which can have a material negative impact on IML's brand, value, revenue, and ability to continue in its business relationships with both IBOs and customers.

96.     Defendants intentionally engaged in acts intended or designed to disrupt IML's contractual relationships.

97.     IML's contractual relationships with customers and IBOs have in fact been actually disrupted.

98.     Defendants' conduct was not legally justified.

99.     As a direct and proximate result of Defendants' interference with IML's contractual relationships, IML has been harmed in amount in excess of one million dollars ($1,000,000.00).

100.    It has been necessary for IML to retain the services of an attorney to prosecute this action and, therefore, IML is entitled to reasonable attorney's fees and costs.

**X.**
**SEVENTH CLAIM FOR RELIEF**

(Tortious Interference with Prospective Economic Advantage against Defendants)

101.    IML incorporates by reference and reaffirms each and every allegation previously asserted as if fully set forth herein.

102.    IML had prospective contractual relationships with customers who desired to participate in receiving digital educational services and IBOs who desired to participate in the IML business opportunity.

103.    Defendants knew of these prospective relationships.

-17-

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

104.    Defendants spread false information and used IML's confidential information and trade secrets with the intent of preventing and inhibiting IML's relationships with the prospective customers and IBOs.

105.    Defendants' conduct was not legally justified or privileged.

106.    As a direct and proximate result of Defendants' interference with the prospective customer relationships, IML has been harmed in amount in excess of one million dollars ($1,000,000.00).

107.    It has been necessary for IML to retain the services of an attorney to prosecute this action and, therefore, IML is entitled to reasonable attorney's fees and costs.

## XI.
## EIGHTH CLAIM FOR RELIEF

(Conspiracy against all Defendants)

108.    IML incorporates by reference and reaffirms each and every allegation previously asserted as if fully set forth herein.

109.    Defendants, in a combination of two or more persons, conspired to commit unlawful acts against IML.

110.    Defendants decided upon an object to be accomplished to harm IML namely Defendants object to be accomplished was (1) the theft of IML Confidential Information and intellectual property, and (2) the bribery, solicitation, recruitment, and encouragement of IML IBOs, contractors and customers to breach their contracts with IML.

111.    Defendants, in a combination of two or more persons, reached a meeting of the minds as to the object to be accomplished identified above.

112.    Defendants committed one or more unlawful, overt acts, including to the detriment and harm of IML.

/ / /

113. Defendants' concerted action was intended to cause an unlawful objecting for the purpose of harming IML.

114. As a direct and proximate result of Defendants' unlawful conspiracy, IML has been harmed in amount in excess of one million dollars ($1,000,000.00).

115. It has been necessary for IML to retain the services of an attorney to prosecute this action and, therefore, IML is entitled to reasonable attorney's fees and costs.

## XII.
## REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief against Defendants:

1. For Damages in an amount greater than $1,000,000.00 as a result of Defendants' unlawful actions;

2. For injunctive relief to enjoin the Defendants as follows:

a. Defendants shall immediately refrain from using any IML IBO or customer list; trademark, trade secret, program information, or any other confidential information and/or materials, including downlines, back-office data, trading software, and trading algorithms;

b. Defendants shall immediately refrain from disclosing any IML IBO or customer list, trademark, trade secret, program information, or any other confidential information and/or materials;

c. Defendants shall immediately return any equipment, or other materials, including but not limited to, hard copies of documents and/or data, electronic copies of documents and/or data, emails, and any other material containing or referring to any IML IBO or customer list, trademark, trade secret, program information, or any other confidential information and/or materials;

/ / /

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

d.      Defendants shall immediately refrain from conducting and soliciting any business, accepting any employment by or rendering professional services to, any person or organization that is or was a IML IBO, educator , and/or customer, which includes that Nvisionu shall not conduct business with those Defendants who are former IML IBOs, educators or customers; and

e.      Defendants shall immediately refrain from soliciting, recruiting, bribing, and/or enticing IBOs, customers, contractors and/or educators to violate their contracts with IML and/or misappropriate IML's Confidential Information and/or intellectual property.

3.      For an award of pre-judgment interest, as well as reasonable attorneys' fees as both normal and special damages, and other costs; and

4.      For such other and further relief that this Court deems just and proper.

/ / /

/ / /

-20-

Dated this 24th day of June, 2022

Respectfully submitted,

/s/ P. Sterling Kerr, Esq.

_____

P. STERLING KERR, ESQ.
Nevada Bar No. 3978
GEORGE E. ROBINSON, ESQ.
Nevada Bar No. 9667
KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200
Henderson, Nevada 89052
Telephone No. (702) 451-2055
Facsimile No. (702) 451-2077
Email: sterling@kerrsimpsonlaw.com
Email: george@kerrsimpsonlaw.com

DWIGHT M. FRANCIS
Texas Bar No. 00785877
[*Pro Hac Vice* pending]
AIMEE C. OLESON
Texas Bar No. 24036391
[*Pro Hac Vice* pending]
SHEPPARD MULLIN RICHTER &
HAMPTON, LLP
2200 Ross Avenue, Suite 2000
Dallas, Texas 75201
Telephone: (469) 391-7400
Fax: (469) 391-7401
Email: dfrancis@sheppardmullin.com
Email: aoleson@sheppardmullin.com

ALYSSA SONES
California Bar No. 318359
[*Pro Hac Vice* pending]
SHEPPARD MULLIN RICHTER &
HAMPTON, LLP
1901 Avenue of the Stars, 16th Floor
Los Angeles, CA 90067
Telephone: (310) 228-3700
Facsimile: (310) 228-3701
Email: asones@sheppardmullin.com

*Attorneys for Plaintiff*

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone (702) 451-2055 Facsimile (702) 451-2077

-21-

## <u>VERIFICATION</u>

I, Kyle Lowe, certify and declare that:

      I have read the foregoing Verified Complaint and know its contents.

      I am the Chief Operating Officer for Plaintiff International Marketing Live Inc. dba IM Mastery Academy described and defined in the Complaint.  The facts stated in the foregoing document are true based on my own knowledge, except as to those matters that are stated on information and belief, and as to those matters, I believe them to be true.

      I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct at that this Verification was executed on this ___ day of June 2022 in _____, Texas.

6/24/2022

Dallas

DocuSigned by:

2E00A05AB110413

KYLE LOWE

SMRH:4882-4153-9615.10

-22-